Jonathan A. Dessaules, State Bar No. 019439
Douglas M. Imperi, Jr., State Bar No. 034708
**DESSAULES LAW GROUP**
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com
dimperi@dessauleslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Fry, | No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Maricopa County Community College District; Georgetta Kelly and John Doe Kelly, husband and wife; Constance R. Powers and John Doe Powers, husband and wife; Leticia Hernandez and John Doe Hernandez, husband and wife; and Melissa McMullen and John Doe McMullen, husband and wife, | |
| Defendants. | |

Plaintiff James Fry alleges the following:

### PARTIES AND JURISDICTION

1. Plaintiff James Fry ("Plaintiff" and/or "Fry") is, and at all times relevant to this action has been, an individual residing in Maricopa County, Arizona.

2. Upon information and belief, Defendant Maricopa County Community College District ("MCCCD"), is a community college district as defined by A.R.S. § 15-1401, et seq.

3. At all material times hereto Plaintiff was an employee of MCCCD within the definition of 29 U.S.C. § 2601, *et seq*. of the Family and Medical Leave Act ("FMLA").

4. At all times relevant to this action, MCCCD was an employer as defined in 29 U.S.C. § 2601, *et seq.* of the FMLA.

5. At all times relevant to this action, Defendant Georgetta Kelly was the Chief Human Resources Officer for MCCCD, Defendant Leticia Hernandez was a Human Resources Officer for MCCCD, Defendant Melissa McMullen was the Human Resources Director for Phoenix College, and Defendant Constance R. Powers was the Department Chair of the Health Sciences and Nursing Department of Phoenix College (collectively they shall be referred to as the "Individual Named Defendants").

6. At all relevant times, the Individual Named Defendants were also an employer of Plaintiff as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA.

7. At all times material hereto, Defendant MCCCD was acting through its agents and/or employees and is therefore liable for the actions of those agents and/or employees under the doctrine of respondeat superior.

8. Upon information and belief, Defendants Georgetta Kelly and John Doe Kelly; Constance R. Powers and John Doe Powers; Leticia Hernandez and John Doe Hernandez; Melissa McMullen and John Doe McMullen, are married couples, and at all relevant times were residents of Arizona, residing in Maricopa County, Arizona. The true name of the John Doe Defendants is not presently known to Plaintiff, but leave of Court will be requested to add their true names when and if they are discovered.

9. Upon information and belief, all acts alleged in this Complaint against the Individual Named Defendants were performed on behalf of and for the benefit of each of their marital community rendering their marital community liable for the actions of the Individual Named Defendants.

10. This Court has jurisdiction under the FMLA and 28 U.S.C. § 1331.

## GENERAL ALLEGATIONS

11. In 2015, Plaintiff began working for Phoenix College, part of MCCCD, as part of the Counseling Department, where he would provide office support.

12. Then in August of 2016, Plaintiff moved over to Phoenix College's Nursing Department, where he worked as a Senior Laboratory Technician, which involved ensuring the nursing staff had the proper supplies, helping instructors with the preparation of lectures, and maintaining lab equipment.

13. Plaintiff was fully qualified for his position as a Senior Laboratory Technician. He has a Bachelor's degree in Humanities and Master's Degree in Sociology from Northern Arizona University. He also has several years of experience in his position and his performance reviews have been nothing short of satisfactory.

14. While employed as a Senior Laboratory Technician, Plaintiff typically worked 30 hours a week for 10 months a year.

15. In the spring of 2021, Plaintiff was given ten (10) extra work hours and worked 40 hours a week for approximately 8 weeks.

16. On or about August 19, 2021, Plaintiff informed MCCCD's Human Resources Department that he would need to take FMLA leave due to his own serious health condition (his "First Request").

17. On August 23, 2021, Human Resources supplied Plaintiff a packet for requesting FMLA leave, which Plaintiff submitted a day later.

18. Plaintiff requested FMLA leave from August 16, 2021, until September 17, 2021.

19. Plaintiff timely submitted a certification by his health care provider establishing the basis for Plaintiff taking FMLA leave on or about September 3, 2021.

20. On September 8, 2021, Plaintiff informed MCCCD that he would need to take FMLA leave to care for his mother (his "Second Request").

21. Plaintiff mailed his Second Request to Human Resources on or about September 9, 2021.

22. In this Second Request, he asked for FMLA leave from September 17, 2021, until November 26, 2021.

23. On or about September 20, 2021, Plaintiff emailed Human Resources to inform them MCCCD incorrectly reduced his pay from $1,540.96 to $62.58 while he was taking FMLA leave.

24. Human Resources responded to Plaintiff and said he had not completed or turned in either FMLA request.

25. Plaintiff informed Human Resources that he mailed his forms to its office on September 9, 2021.

26. Defendant Hernandez acknowledged MCCCD received the paperwork no later than September 17, 2021.

27. On September 20, 2021, Plaintiff received an email from Human Resources saying that his "request for FMLA/Medical leave has been processed and approved by our department."

28. Upon information and belief, MCCCD mixed up Plaintiff's FMLA paperwork because it sent him a notice saying it received his supporting information related to "[t]he serious health condition of your spouse, child, or parent" and was approving leave on that basis, for his Second Request, but the approved leave dates were August 15, 2021, to September 17, 2021—the dates for Plaintiff's First Request.

29. MCCCD said it expected Plaintiff to return to work on September 18, 2021, two days before his FMLA leave was approved.

30. On September 23, 2021, Plaintiff mailed MCCCD a certification from Dr. Shane Marin explaining the basis for Plaintiff's Second Request.

31. On September 23, 2021, Plaintiff received a "Position Abandonment Notification letter" from Defendant Powers.

4

32. In the letter, Defendant Powers said Plaintiff did not report to work from September 20, 2021, through September 22, 2021.

33. Powers said Plaintiff did not notify his supervisor of his absence and he was not on approved leave.

34. Powers gave Plaintiff until September 27, 2021, to either report to work or request leave (if eligible). Otherwise, MCCCD would fire Plaintiff for abandoning his position.

35. On September 24, 2021, Plaintiff mailed his response to the "Position Abandonment Notification Letter." In his response, Plaintiff explained that he sent two requests for FMLA leave and he adhered to all administrative deadlines for filing the necessary paperwork.

36. Plaintiff also noted that MCCCD improperly withheld wages while he was on FMLA leave and did not check the mail for his FMLA paperwork.

37. Plaintiff sent his response via certified mail and received a mailing certificate showing the response was delivered on September 25, 2021.

38. Nevertheless, on September 28, 2021, Plaintiff received a "Letter of Discipline" from Defendant Kelly.

39. Kelly's letter told Plaintiff he was involuntarily terminated for allegedly not coming to work without notifying a supervisor or taking approved leave.

40. Kelly claimed Plaintiff "failed to respond to the notification letter by 5 pm September 27, 2021."

41. Kelly's letter gave Plaintiff until October 8, 2021, to appeal the discipline.

42. Plaintiff emailed his appeal on October 8, 2021, but Kelly rejected that appeal on November 16, 2021.

43. Plaintiff's employment was terminated effective September 28, 2021.

44. Upon information and belief, Plaintiff was terminated, in whole or in part, because of his use of FMLA leave.

## COUNT I
### (Violation of the Family and Medical Leave Act)

45. Plaintiff incorporates all the foregoing paragraphs as if fully set forth herein.

46. The FMLA, 29 U.S.C. § 2601, *et seq.*, allows an eligible employee to take up to twelve weeks of unpaid leave in any 12-month period for various purposes, including for serious health conditions or to care for a relative with a serious health condition.

47. Plaintiff was an eligible employee and Defendants were covered employers under the FMLA.

48. Plaintiff's mother suffered from a serious health condition as defined in the FMLA.

49. Plaintiff took qualified FMLA leave from his job with Defendants so that he could take care of his mother.

50. Although Defendants approved Plaintiff's request for FMLA leave, it terminated Plaintiff solely because he was absent from work for the days he requested leave.

51. Defendants violated the FMLA by (1) interfering with Plaintiff's FMLA rights or (2) retaliating against Plaintiff for exercising FMLA leave when Defendants involuntarily terminated his employment after or while he was taking qualified FMLA leave.

52. As provided for under the FMLA, Plaintiff is entitled to collect liquidated damages equal to the sum of his lost compensation, wages, and benefits.

53. As a result of Defendants' violations of the FMLA, Plaintiff is entitled to collect wages, employment, and pension benefits denied or lost, interest on this amount, liquidated damages equal to the lost compensation, wages, and benefits, including his back pay damages, pain and suffering for his retaliation claims, and reasonable attorneys' fees and costs. Plaintiff is also entitled to reinstatement or in lieu thereof front pay and other appropriate equitable relief, as well as all other remedies available under 29 U.S.C. § 2601, *et seq*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

Case 2:22-cv-00984-DJH   Document 1   Filed 06/06/22   Page 7 of 7

   (A) A declaration that the employment practices complained of in this Complaint are unlawful and that they violate 29 U.S.C. § 2601, *et seq.*;

   (B) An award of damages in an amount equal to any wages, salary, employment benefits, and other compensation denied or lost to Plaintiff, all amounts to be proven at trial;

   (C) An award of compensatory damages for his economic losses, pain and suffering, emotional distress, harm to reputation and loss of earning capacity, and all special damages or financial losses that Plaintiff suffered in an amount to be proven at trial;

   (D) An award of liquidated damages equal to the sum of the amount of any wages, salary, employment benefits, and other compensation Plaintiff lost;

   (E) An award of pre- and post-judgment interest;

   (F) All relief available under the FMLA;

   (G) An award of attorneys' fees and costs per 29 U.S.C. § 2601, *et seq.*;

   (H) The Court retains jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants to file such reports as the Court deems necessary to evaluate such compliance; and

   (I) Such other relief the Court deems just and proper.

DATED this 6th day of June 2022.

              DESSAULES LAW GROUP

              By: /s/ Jonathan A. Dessaules
                 Jonathan A. Dessaules
                 Douglas M. Imperi, Jr.
                 *Attorneys for Plaintiff*

7